```
                                          FILED
                                   CLERK, U.S. DISTRICT COURT

                                      8/4/2022

                                  CENTRAL DISTRICT OF CALIFORNIA
                                  BY: _____ CD _____ DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

March 2022 Grand Jury

| UNITED STATES OF AMERICA, | CR  2:22-cr-00354-RGK |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [21 U.S.C. § 846: Conspiracy to Distribute and to Possess With Intent to Distribute Controlled Substances; 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi), (b)(1)(A)(viii), (b)(1)(B)(ii), (b)(1)(B)(vi), (b)(1)(C): Distribution of and Possession with Intent to Distribute Controlled Substances and a Fentanyl Analogue; 21 U.S.C. § 856(a)(1): Maintaining a Drug-Involved Premises; 18 U.S.C. § 924(c)(1)(A): Possession of Firearms in Furtherance of Drug Trafficking Crimes; 18 U.S.C. § 922(g)(1): Felon in Possession of Firearms and Ammunition; 21 U.S.C. § 853; 18 U.S.C. § 924; 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| GENARO RAMOS, aka "Bandit," ELVIS ARREGUIN, ARTURO ENRIQUE GONZALEZ NAVARRO, aka "Kike," OSCAR RICO, aka "Chile," ALEX JEOVANY GIL, NOE CHAIREZ, aka "Junior," ELIAZAR LOPEZ, REYES BALDOMERO BRENES, aka "Rey Rey," JUSTIN CORNELL MOSELY, PHILIP JESUS SOTO, NICHOLAS WILLARD, OMAR RAMOS, JOSE ANTONIO OLMOS, JORGE VALDIVIA, aka "George Gonzalez Salazar," FNU LNU, aka "UM0555," MIGUEL PUENTE, and SAUL ERNESTO SERVELLON, | |
| Defendants. | |

1   The Grand Jury charges:

2   COUNT ONE

3   [21 U.S.C. § 846]

4   [ALL DEFENDANTS]

5   A.   OBJECTS OF THE CONSPIRACY

6   Beginning on a date unknown to the Grand Jury, and continuing

7   until on or about September 23, 2021, in Los Angeles and Orange

8   Counties, within the Central District of California, and elsewhere,

9   defendants GENARO RAMOS, also known as ("aka") "Bandit" ("G. RAMOS"),

10   ELVIS ARREGUIN, ARTURO ENRIQUE GONZALEZ NAVARRO, aka "Kike," OSCAR

11   RICO, aka "Chile," ALEX JEOVANY GIL, NOE CHAIREZ, aka "Junior,"

12   ELIAZAR LOPEZ, REYES BALDOMERO BRENES, aka "Rey Rey," JUSTIN CORNELL

13   MOSELY, PHILIP JESUS SOTO, NICHOLAS WILLARD, OMAR RAMOS ("O. RAMOS"),

14   JOSE ANTONIO OLMOS, JORGE VALDIVIA, aka "George Gonzalez Salazar,"

15   FIRST NAME UNKNOWN LAST NAME UNKNOWN ("FNU LNU"), aka "UM0555,"

16   MIGUEL PUENTE, and SAUL ERNESTO SERVELLON, and others known and

17   unknown to the Grand Jury, conspired with each other to knowingly and

18   intentionally distribute and possess with intent to distribute:

19   (a)   At least 50 grams of methamphetamine, a Schedule II

20   controlled substance, in violation of Title 21, United States Code,

21   Sections 841(a)(1), (b)(1)(A)(viii);

22   (b)   At least 400 grams of a mixture and substance

23   containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-

24   piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug

25   controlled substance, in violation of Title 21, United States Code,

26   Sections 841(a)(1), (b)(1)(A)(vi);

27   (c)   At least five kilograms of a mixture and substance

28   containing a detectable amount of cocaine, a Schedule II narcotic

1  drug controlled substance, in violation of Title 21, United States

2  Code, Sections 841(a)(1), (b)(1)(A)(ii).

3          (d)  At least one kilogram of a mixture and substance

4  containing a detectable amount of heroin, a Schedule I narcotic drug

5  controlled substance, in violation of Title 21, United States Code,

6  Sections 841(a)(1), (b)(1)(A)(i).

7  B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE

8       ACCOMPLISHED

9       The objects of the conspiracy were to be accomplished, in

10  substance, as follows:

11      1.   Defendants G. RAMOS, ARREGUIN, GONZALEZ NAVARRO, RICO, GIL,

12  and CHAIREZ would supply co-conspirators with controlled substances

13  for further distribution.

14      2.   Defendants G. RAMOS, ARREGUIN, GONZALEZ NAVARRO, RICO, GIL,

15  CHAIREZ, LOPEZ, BRENES, MOSELY, SOTO, O. RAMOS, OLMOS, VALDIVIA,

16  PUENTE, and SERVELLON would sell controlled substances, including

17  methamphetamine, fentanyl, cocaine, and heroin, to customers in

18  Southern California, and elsewhere.

19      3.   Defendants G. RAMOS, ARREGUIN, GONZALEZ NAVARRO, GIL,

20  WILLARD, MOSELY, and FNU LNU would distribute controlled substances,

21  including methamphetamine, fentanyl, and cocaine, to customers on the

22  East Coast by shipping packages containing the controlled substances

23  through the United States Postal Service, FedEx, and UPS.

24      4.   Defendant ARREGUIN would maintain a premises for the

25  purpose of manufacturing and distributing fentanyl and

26  methamphetamine.

27      5.   Defendants G. RAMOS, RICO, GIL, MOSELY, and O. RAMOS would

28  possess firearms to protect their drugs and drug proceeds.

C.   <u>OVERT ACTS</u>

In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendants G. RAMOS, ARREGUIN, GONZALEZ NAVARRO, RICO, GIL, CHAIREZ, LOPEZ, BRENES, MOSELY, SOTO, WILLARD, O. RAMOS, OLMOS, VALDIVIA, FNU LNU, PUENTE, and SERVELLON, and others known and unknown to the Grand Jury, committed various overt acts in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, including, but not limited to, the following:

1.   On November 12, 2020, defendant G. RAMOS, using coded language in a telephone conversation, agreed to distribute approximately one pound of methamphetamine to an individual he believed was a methamphetamine customer, but who was, in fact, a confidential informant working with law enforcement ("CI-1"), in exchange for $2,200.

2.   On November 12, 2020, in Los Angeles, California, defendant G. RAMOS distributed approximately one pound, that is, approximately 445 grams, of methamphetamine to CI-1 in exchange for $2,200.

3.   On December 11, 2020, defendant G. RAMOS, using coded language in a telephone conversation, agreed to distribute approximately a half-pound of methamphetamine to CI-1 and to have his brother, defendant O. RAMOS, deliver it to CI-1.

4.   On December 11, 2020, defendant G. RAMOS, using coded language in a telephone conversation, confirmed that he could still distribute a half-pound of methamphetamine and told CI-1 that defendant O. RAMOS would deliver it.

5.   On December 11, 2020, in Huntington Park, California, defendant O. RAMOS distributed approximately a half-pound, that is,

4

1    approximately 219 grams, of methamphetamine to CI-1 on behalf of

2    defendant G. RAMOS in exchange for $1,250.

3         6.   On February 4, 2021, defendant G. RAMOS, using coded

4    language in a text message conversation, agreed to distribute

5    approximately a half-pound of methamphetamine to CI-1 in exchange for

6    $1,200.

7         7.   On February 4, 2021, in Huntington Park, California,

8    defendant G. RAMOS distributed approximately a half-pound, that is,

9    approximately 215 grams, of methamphetamine to CI-1 in exchange for

10   $1,200.

11        8.   On February 4, 2021, defendant G. RAMOS, using coded

12   language in an in-person conversation, told CI-1 that he had cocaine

13   available to sell.

14        9.   On March 9, 2021, defendant G. RAMOS, using coded language

15   in a telephone conversation, discussed distributing a half-pound of

16   methamphetamine to CI-1 in exchange for $1,200.

17        10.  On March 9, 2021, defendant G. RAMOS, using coded language

18   in a text message conversation, agreed to distribute approximately

19   one ounce of cocaine to CI-1 in exchange for $1,050.

20        11.  On March 10, 2021, defendant G. RAMOS, using coded language

21   in a telephone conversation, confirmed that he would distribute

22   approximately one ounce of cocaine to CI-1 in exchange for $1,050.

23        12.  On March 10, 2021, in Huntington Park, California,

24   defendant G. RAMOS distributed approximately one ounce, that is,

25   approximately 27.78 grams, of cocaine to CI-1 in exchange for $1,050.

26        13.  On March 31, 2021, defendant BRENES, using coded language

27   in a telephone conversation, told an individual who he believed was a

28   drug customer, but who was, in fact, a confidential informant working

with law enforcement ("CI-2"), that he could get a pound of methamphetamine for $1,300 to sell to CI-2, and that defendant BRENES could sell 1,000 fentanyl pills to CI-2 for $3,500.

14. On March 31, 2021, in Long Beach, California, defendants LOPEZ and BRENES distributed approximately 1,000 pills containing fentanyl, weighing approximately 112.4 grams, to CI-2 in exchange for $3,450.

15. On March 31, 2021, defendants LOPEZ and BRENES, using coded language in an in-person conversation, asked CI-2 how much methamphetamine CI-2 would like to purchase from them.

16. On April 21, 2021, defendants G. RAMOS and SERVELLON, using coded language in a telephone conversation, discussed defendant G. RAMOS supplying defendant SERVELLON with 4.5 ounces of cocaine in exchange for approximately $4,410.

17. On April 21, 2021, defendants G. RAMOS and SERVELLON, using coded language in a telephone conversation, discussed defendant SERVELLON's customer, who wanted to purchase 50 kilograms of cocaine, which defendant G. RAMOS said should cost approximately $28,000 per kilogram.

18. On April 21, 2021, defendants G. RAMOS and SERVELLON, using coded language in a telephone conversation, discussed defendant SERVELLON coming over to defendant G. RAMOS's house to pick up cocaine later that night.

19. On April 21, 2021, defendant SERVELLON, using coded language in a telephone conversation, told defendant G. RAMOS that he picked up 126 grams of cocaine from defendant G. RAMOS's house.

6

20.   On April 21, 2021, defendant SOTO, using coded language in a telephone conversation, told defendant G. RAMOS that he would obtain methamphetamine from defendant G. RAMOS the following day.

21.   On April 22, 2021, defendant SOTO, using coded language in a telephone conversation, told defendant G. RAMOS that he would obtain methamphetamine from defendant G. RAMOS in approximately one hour.

22.   On April 22, 2021, defendants G. RAMOS and SOTO, using coded language in a telephone conversation, discussed defendant G. RAMOS supplying defendant SOTO with additional methamphetamine in packaging that defendant SOTO's customer would prefer.

23.   On April 22, 2021, defendant G. RAMOS, using coded language in a telephone conversation, told defendant SOTO that he could sell a kilogram of cocaine that he obtained at a price of $28,000 for $29,000.

24.   On April 22, 2021, defendant G. RAMOS, using coded language in a telephone conversation, agreed to distribute two pounds of methamphetamine to CI-1 in exchange for $4,000.

25.   On April 22, 2021, in Huntington Park, California, defendant G. RAMOS distributed approximately two pounds, that is, approximately 891 grams, of methamphetamine to CI-1 in exchange for $4,000.

26.   On April 23, 2021, defendant G. RAMOS, using coded language in multiple telephone conversations, told defendant SOTO that when defendant SOTO's methamphetamine customer returned four pounds of methamphetamine to defendant G. RAMOS, over a pound of the methamphetamine was missing.

27.   On April 26, 2021, defendant G. RAMOS, using coded language in a telephone conversation, told defendant WILLARD that he had fentanyl pills available to sell to him, and asked defendant WILLARD whether he was ready to pay.

28.   On April 27, 2021, defendants G. RAMOS and SOTO, using coded language in a telephone conversation, discussed defendant SOTO's $31,000 drug debt to defendant G. RAMOS.

29.   On April 27, 2021, defendant PUENTE, using coded language in a telephone conversation, asked to purchase approximately 15 pounds of methamphetamine from defendant G. RAMOS, and defendant G. RAMOS said that he currently had that quantity available.

30.   On April 27, 2021, defendant G. RAMOS, using coded language in a telephone conversation, told defendant PUENTE that defendant G. RAMOS could buy a pound of methamphetamine for $1,150, and, therefore, would be willing to supply defendant PUENTE with methamphetamine for $1,200 per pound, so that defendant G. RAMOS could make a profit.

31.   On April 28, 2021, defendant G. RAMOS, using coded language in a telephone conversation, agreed to provide defendant SOTO with approximately 25 pounds of methamphetamine.

32.   On April 29, 2021, defendant CHAIREZ, using coded language in a telephone conversation, asked defendant G. RAMOS if he wanted to purchase a half-kilogram of cocaine.

33.   On April 29, 2021, defendants G. RAMOS and SOTO, using coded language in a telephone conversation, discussed defendant SOTO needing to deliver 25 pounds of methamphetamine the next day.

34.   On April 30, 2021, defendant G. RAMOS, using coded language in a telephone conversation, directed defendant SOTO to meet him near

defendant G. RAMOS's house so that defendant G. RAMOS could provide defendant SOTO with 25 pounds of methamphetamine.

35.   On April 30, 2021, in Bell Gardens, California, defendant SOTO possessed approximately 25 pounds, that is, approximately 10.82 kilograms, of methamphetamine in the trunk of his car.

36.   On May 1, 2021, defendant RICO, using coded language in a telephone conversation, asked defendant G. RAMOS for the price of cocaine and defendant G. RAMOS told defendant RICO that he could sell cocaine to defendant RICO for approximately $945 per ounce.

37.   On May 3, 2021, defendant G. RAMOS, using coded language in a telephone conversation, told defendant ARREGUIN that defendant SOTO was recently arrested.

38.   On May 6, 2021, defendant SERVELLON, using coded language in a telephone conversation, asked defendant G. RAMOS for approximately two ounces of cocaine.

39.   On May 6, 2021, using coded language in a telephone conversation, defendant VALDIVIA asked defendant G. RAMOS if defendant G. RAMOS could sell him fentanyl, and defendant G. RAMOS responded that he could obtain a kilogram of fentanyl to sell to defendant VALDIVIA in exchange for $21,000.

40.   On May 8, 2021, defendant SERVELLON, using coded language in a telephone conversation, asked defendant G. RAMOS for approximately nine ounces of cocaine.

41.   On May 8, 2021, defendant SERVELLON, using coded language in a telephone conversation, discussed drug pricing with defendant G. RAMOS and told defendant G. RAMOS that defendant SERVELLON had mushrooms, lysergic acid diethylamide ("LSD"), Xanax, and codeine available to sell.

42.  On May 8, 2021, defendant CHAIREZ, using coded language in a telephone conversation, agreed to supply defendant G. RAMOS with a half-kilogram of cocaine.

43.  On May 16, 2021, defendant CHAIREZ, using coded language in a telephone conversation, agreed to supply defendant G. RAMOS with a kilogram of cocaine for $27,000.

44.  On May 18, 2021, defendant PUENTE, using coded language in a telephone conversation, told defendant G. RAMOS that he needed to purchase at least two pounds of methamphetamine, which defendant G. RAMOS said would cost $1,200 per pound, and that defendant PUENTE would also like to purchase cocaine, which defendant G. RAMOS said he could obtain for approximately $26,000-$26,500 per kilogram.

45.  On May 18, 2021, defendant CHAIREZ, using coded language in a telephone conversation, agreed to supply defendant G. RAMOS with a half-kilogram of cocaine for $13,500.

46.  On May 19, 2021, defendant CHAIREZ, using coded language in a telephone conversation, told defendant G. RAMOS that he would deliver a half-kilogram of cocaine to defendant G. RAMOS approximately an hour later in Compton, California.

47.  On May 19, 2021, defendant VALDIVIA, using coded language during a telephone conversation, asked defendant G. RAMOS for a pound of methamphetamine, and defendant G. RAMOS agreed to sell approximately one pound of methamphetamine to defendant VALDIVIA.

48.  On June 8, 2021, defendant SERVELLON, using coded language in a telephone conversation, asked G. RAMOS for approximately two ounces of cocaine, which defendant G. RAMOS said would cost $950.

49.  On June 8, 2021, defendant GIL, using coded language in a telephone conversation, told a methamphetamine customer that

defendant GIL's methamphetamine supplier could supply five pounds of methamphetamine for approximately $1,050 per pound.

50. On June 8, 2021, defendant GIL, using coded language in a telephone conversation, asked defendant GONZALEZ NAVARRO for 2,000 fentanyl pills, which defendant GONZALEZ NAVARRO said he had run out of due to their high quality.

51. On June 8, 2021, defendant ARREGUIN, using coded language in a telephone conversation, asked a drug supplier for heroin that he could sell.

52. On June 9, 2021, defendant ARREGUIN, using coded language in a telephone conversation, asked a co-conspirator for a source who could supply him with 10 pounds of methamphetamine.

53. On June 9, 2021, defendant ARREGUIN, using coded language in a telephone conversation, asked defendant GONZALEZ NAVARRO for methamphetamine and whether defendant GONZALEZ NAVARRO had obtained any fentanyl pills.

54. On June 9, 2021, defendant GONZALEZ NAVARRO, using coded language in a telephone conversation, told defendant GIL that he had kilogram quantities of cocaine available to sell.

55. On June 9, 2021, defendants GIL and GONZALEZ NAVARRO, using coded language in a telephone conversation, discussed the pricing and quality of different brands of cocaine.

56. On June 9, 2021, defendant GIL, using coded language in a telephone conversation, told a cocaine customer that he could sell a kilogram of cocaine for approximately $26,800.

57. On June 9, 2021, defendant GIL, using coded language in a telephone conversation, asked a drug supplier for a sample of heroin.

11

58.   On June 11, 2021, defendant ARREGUIN, using coded language in a telephone conversation, asked a co-conspirator if he had been able to find a source of supply for heroin.

59.   On June 12, 2021, defendant SERVELLON, using coded language in a telephone conversation, told defendant G. RAMOS that he still wanted approximately two ounces of cocaine and that he would pick it up from defendant G. RAMOS in approximately five minutes.

60.   On June 12, 2021, defendant GIL, using coded language in a telephone conversation, discussed the price of a kilogram of cocaine with cocaine customer.

61.   On June 12, 2021, defendant GIL, using coded language in a telephone conversation, discussed the price of kilogram quantities of cocaine with a drug supplier.

62.   On June 17, 2021, defendant ARREGUIN, using coded language in a telephone conversation, advised a drug customer that the fentanyl for which he was waiting had not yet crossed the border from Mexico into the United States.

63.   On June 17, 2021, defendant GONZALEZ NAVARRO, using coded language in a telephone conversation, told defendant GIL that he had some cocaine and fentanyl pills available to sell.

64.   On June 18, 2021, defendant LOPEZ, using coded language in a telephone conversation, asked defendant GIL for half of a kilogram of heroin.

65.   On June 18, 2021, defendant RICO, using coded language in a telephone conversation, told a drug customer that he had counterfeit M30 pills that contained fentanyl available to sell.

66.   On June 19, 2021, defendant ARREGUIN, using coded language in a telephone conversation, told a drug supplier

("Co-Conspirator 1") that cocaine was available for approximately $26,500 per kilogram.

67.  On June 19, 2021, defendant RICO, using coded language in a telephone conversation, told a cocaine customer that he had a kilogram of cocaine available to sell for $23,500-$24,000.

68.  On June 19, 2021, defendant RICO, using coded language in a telephone conversation, told a fentanyl customer that he had fentanyl pills available to sell.

69.  On June 20, 2021, defendant GONZALEZ NAVARRO, using coded language in a telephone conversation, told defendant GIL that the last 10,000 fentanyl pills had been sold, and that he was currently waiting for a new shipment to arrive.

70.  On June 21, 2021, defendant RICO, using coded language in a telephone conversation, told defendant VALDIVIA that he could sell a kilogram of cocaine for $25,000.

71.  On June 22, 2021, defendant RICO, using coded language in a telephone conversation, told a methamphetamine customer that he would give the customer one pound of methamphetamine and a rifle, which would pay off part of defendant RICO's drug debt.

72.  On June 23, 2021, defendant WILLARD went to a post office in Huntington Park, California, and mailed two packages: one package addressed to Warren, Pennsylvania, containing approximately 418 grams of methamphetamine, and another package addressed to Olean, New York, containing approximately 860 grams of methamphetamine.

73.  On June 27, 2021, defendants G. RAMOS and CHAIREZ, using coded language in a telephone conversation, discussed two kilograms of cocaine that defendant CHAIREZ was supplying, which defendant G. RAMOS needed to package.

13

74.  On June 28, 2021, defendant ARREGUIN, using coded language in a telephone conversation, discussed the availability and quality of heroin with Co-Conspirator 1.

75.  On June 28, 2021, defendant ARREGUIN, using coded language in a telephone conversation, told a co-coconspirator that he had two kilograms of heroin available to sell for approximately $16,000-$17,000 each.

76.  On June 28, 2021, defendant RICO, using coded language in a telephone conversation, discussed selling four pounds of methamphetamine with a drug broker.

77.  On June 29, 2021, defendants GONZALEZ NAVARRO and GIL arranged to mail, and caused the mailing of, a package from Santa Ana, California, to Washington D.C., containing approximately 987 grams of cocaine.

78.  On June 30, 2021, defendants GONZALEZ NAVARRO and GIL, using coded language in a telephone conversation, discussed the package that they had sent to Washington D.C., which contained approximately 987 grams of cocaine.

79.  On June 30, 2021, defendant FNU LNU, using coded language in a telephone conversation, told defendant GIL that he was travelling from New York to Washington D.C. to pick up the package containing approximately 987 grams of cocaine that defendants GONZALEZ NAVARRO and GIL had sent to Washington D.C. through the mail.

80.  On July 1, 2021, defendants GONZALEZ NAVARRO, GIL, and FNU LNU, using coded language in a telephone conversation, discussed the package of cocaine that they had sent on June 28, 2021, as well as additional packages that were going to arrive on July 1 and 2, 2021.

14

81.   On July 2, 2021, defendants GONZALEZ NAVARRO and GIL, using coded language in a telephone conversation, discussed mailing a package of cocaine via FedEx.

82.   On July 2, 2021, defendant GIL, using coded language in a telephone conversation, told defendant GONZALEZ NAVARRO that he was staying at a hotel in Washington, D.C., with a FedEx kiosk on site, where he could receive a package of cocaine.

83.   On July 2, 2021, defendant GONZALEZ NAVARRO caused the mailing of a package containing approximately 995 grams of cocaine from a FedEx store in Tustin, California, to defendant GIL in Washington, D.C.

84.   On July 3, 2021, defendant GIL, using coded language in a telephone conversation, told defendant GONZALEZ NAVARRO that tracking information showed that their package of cocaine was delayed in Memphis, Tennessee, and that defendant GONZALEZ NAVARRO should track the shipment using the tracking number.

85.   On July 3, 2021, defendant GIL, using coded language in a telephone conversation, told a co-conspirator that he was in Washington, D.C., awaiting two packages of cocaine (one sent through the Post Office and the other via FedEx).

86.   On July 4, 2021, defendant GIL, using coded language in a telephone conversation, updated a co-conspirator on the status of a cocaine shipment that was no longer scheduled to arrive at its destination in Washington, D.C.

87.   On July 7, 2021, defendants ARREGUIN and a co-conspirator drove together to a UPS store in Long Beach, California, where the co-conspirator dropped off a package containing approximately 10.007

kilograms of fentanyl that were packaged in one-kilogram bundles and covered in mustard.

88. On July 12, 2021, defendant RICO, using coded language in a telephone conversation, told defendant G. RAMOS that he could sell him a kilogram of cocaine for $24,000.

89. On July 13, 2021, defendant RICO provided defendant OLMOS with approximately 436 grams of methamphetamine.

90. On July 13, 2021, defendant OLMOS possessed with the intent to distribute approximately 436 grams of methamphetamine on the passenger seat of his car in Walnut Park, California.

91. On August 24, 2021, defendants GIL and MOSELY, using coded language in a telephone conversation, discussed sending kilogram quantities of cocaine to Washington D.C.

92. On August 31, 2021, defendants GIL and MOSELY, using coded language in a telephone conversation, discussed selling two separate customers five kilograms of cocaine each in Washington D.C.

93. On August 31, 2021, defendant GIL, using coded language in a telephone conversation, agreed to provide a sample of fentanyl pills to defendant MOSELY.

94. On September 5, 2021, defendant MOSELY, using coded language in a telephone conversation, told defendant GIL that he was going to pick up five kilograms of cocaine that night, and was capable of obtaining seven, eight, or ten kilograms of cocaine later.

95. On September 6, 2021, in Anaheim, California, defendant MOSELY possessed with intent to distribute approximately 165 grams of fentanyl pills in a plastic bag.

96. On September 6, 2021, defendant MOSELY possessed with intent to distribute approximately 473.9 grams of cocaine, as well as

16

an Israel Military Industries, model Desert Eagle, .40 caliber semi-automatic pistol, bearing serial number 32314808, in his home in Anaheim, California.

97.  On September 9, 2021, defendant CHAIREZ possessed with intent to distribute approximately 2.0092 kilograms of cocaine in his home in Long Beach, California.

98.  On September 9, 2021, defendant RICO possessed in his home in Huntington Park, California, approximately 6.713 kilograms of methamphetamine in his master bedroom; a chrome Taurus, model PT 92 AFS-D, 9mm semi-automatic pistol, bearing seral number TLR83493 in his master bedroom; a black digital scale in his kitchen drawer; and approximately 34.7 grams of cocaine in a kitchen drawer.

99.  On September 9, 2021, defendant G. RAMOS possessed the following in his house in Huntington Park, California: approximately 548 grams of fentanyl pills in his kitchen; approximately 433 grams of fentanyl analogue pills in his kitchen; a Glock, model 17, 9mm caliber semi-automatic pistol, bearing serial number BCBK446, loaded with 17 rounds of 9mm caliber ammunition in his bedroom closet; a Springfield Armory U.S.A., model XDs-40, .40 caliber semi-automatic pistol, bearing serial number S3526985, with two magazines and 13 rounds of .40 caliber ammunition on his television stand; and approximately $2,405 in his backpack.

100. On September 9, 2021, defendant O. RAMOS possessed the following in his bedroom in Huntington Park, California: approximately 8.2 grams of methamphetamine; approximately 11.8 grams of cocaine; a Springfield Armory U.S.A., model XDs-9, 9mm caliber semi-automatic pistol, bearing serial number S3850147, with two magazines and 12 rounds of 9mm caliber ammunition; a Glock, model 43,

9mm caliber semi-automatic pistol, bearing serial number ABNT956 with one magazine, five rounds of 9mm caliber ammunition and 16 rounds of .40 caliber ammunition; and approximately $2,200.

101. On September 9, 2021, defendant VALDIVIA possessed approximately 162.8 grams of methamphetamine and approximately $2,300 in his bedroom in Huntington Park, California.

102. September 9, 2021, defendant GONZALEZ NAVARRO, using coded language in a telephone conversation, told defendant GIL that defendant GONZALEZ NAVARRO had been arrested, that they both should change their phone numbers, that law enforcement had asked him to cooperate, and that he fled.

103. On September 21, 2021, defendant ARREGUIN maintained and controlled a fentanyl and methamphetamine laboratory in a warehouse in Long Beach, California, where he also possessed approximately 674.9 grams of methamphetamine.

104. On September 23, 2021, defendant GIL possessed the following in his bedroom in Anaheim Hills, California: 4.8 grams of cocaine; a Polymer 80, 9mm semi-automatic pistol, with no serial number (commonly referred to as a "ghost gun"); a 9mm Glock 15-round capacity magazine; two rounds of 9mm caliber ammunition; a .45 caliber seven-round capacity magazine; seven rounds of .45 caliber ammunition; and approximately $9,574.

COUNT TWO

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT G. RAMOS]

On or about November 12, 2020, in Los Angeles County, within the Central District of California, defendant GENARO RAMOS, also known as "Bandit," knowingly and intentionally distributed at least fifty grams, that is, approximately 445 grams, of methamphetamine, a Schedule II controlled substance.

COUNT THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

[DEFENDANTS G. RAMOS and O. RAMOS]

On or about December 11, 2020, in Los Angeles County, within the Central District of California, defendants GENARO RAMOS, also known as "Bandit," and OMAR RAMOS, each aiding and abetting the other, knowingly and intentionally distributed at least fifty grams, that is, approximately 219 grams, of methamphetamine, a Schedule II controlled substance.

COUNT FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT G. RAMOS]

On or about February 4, 2021, in Los Angeles County, within the Central District of California, defendant GENARO RAMOS, also known as "Bandit," knowingly and intentionally distributed at least fifty grams, that is, approximately 215 grams, of methamphetamine, a Schedule II controlled substance.

COUNT FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

[DEFENDANT G. RAMOS]

On or about March 10, 2021, in Los Angeles County, within the Central District of California, defendant GENARO RAMOS, also known as "Bandit," knowingly and intentionally distributed cocaine, a Schedule II narcotic drug controlled substance.

COUNT SIX

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi); 18 U.S.C. § 2(a)]

[DEFENDANTS LOPEZ and BRENES]

On or about March 31, 2021, in Los Angeles County, within the Central District of California, defendants ELIAZAR LOPEZ and REYES BALDOMERO BRENES, also known as "Rey Rey," each aiding and abetting the other, knowingly and intentionally distributed at least 40 grams, that is, approximately 112.4 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT SEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT G. RAMOS]

On or about April 22, 2021, in Los Angeles County, within the Central District of California, defendant GENARO RAMOS, also known as "Bandit," knowingly and intentionally distributed at least fifty grams, that is, approximately 891 grams, of methamphetamine, a Schedule II controlled substance.

COUNT EIGHT

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

[DEFENDANTS G. RAMOS and SOTO]

On or about April 30, 2021, in Los Angeles County, within the Central District of California, defendants GENARO RAMOS, also known as "Bandit," and PHILIP JESUS SOTO, each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 10.82 kilograms, of methamphetamine, a Schedule II controlled substance.

COUNT NINE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT WILLARD]

On or about June 23, 2021, in Los Angeles County, within the Central District of California, defendant NICHOLAS WILLARD knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 1,278 grams, of methamphetamine, a Schedule II controlled substance.

COUNT TEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii); 18 U.S.C. § 2(a)]

[DEFENDANTS GONZALEZ NAVARRO, GIL, and FNU LNU]

On or about June 29, 2021, in Orange County, within the Central District of California, defendants ARTURO ENRIQUE GONZALEZ NAVARRO, also known as ("aka") "Kike," ALEX JEOVANY GIL, and FIRST NAME UNKNOWN LAST NAME UNKNOWN ("FNU LNU"), aka "UM0555," each aiding and abetting the others, knowingly and intentionally possessed with intent to distribute at least 500 grams, that is, approximately 987 grams, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT ELEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii); 18 U.S.C. § 2(a)]

[DEFENDANTS GONZALEZ NAVARRO and GIL]

On or about July 2, 2021, in Orange County, within the Central District of California, defendants ARTURO ENRIQUE GONZALEZ NAVARRO, also known as "Kike," and ALEX JEOVANY GIL, each aiding and abetting the other, knowingly and intentionally possessed with the intent to distribute at least 500 grams, that is, approximately 995 grams, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT TWELVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi); 18 U.S.C. § 2(a)]

[DEFENDANT ARREGUIN]

On or about July 7, 2021, in Los Angeles County, within the Central District of California, defendant ELVIS ARREGUIN, and others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least 400 grams, that is, approximately 10.007 kilograms, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT THIRTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

[DEFENDANTS RICO and OLMOS]

On or about July 13, 2021, in Los Angeles County, within the Central District of California, defendants OSCAR RICO, also known as "Chile," and JOSE ANTONIO OLMOS, each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 436 grams, of methamphetamine, a Schedule II controlled substance.

COUNT FOURTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi)]

[DEFENDANT MOSELY]

On or about September 6, 2021, in Orange County, within the Central District of California, defendant JUSTIN CORNELL MOSELY knowingly and intentionally possessed with intent to distribute at least 40 grams, that is, approximately 165 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT FIFTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

[DEFENDANT MOSELY]

On or about September 6, 2021, in Orange County, within the Central District of California, defendant JUSTIN CORNELL MOSELY knowingly and intentionally possessed with intent to distribute cocaine, a Schedule II narcotic drug controlled substance.

COUNT SIXTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii)]

[DEFENDANT CHAIREZ]

On or about September 9, 2021, in Los Angeles County, within the Central District of California, defendant NOE CHAIREZ, also known as "Junior," knowingly and intentionally possessed with intent to distribute at least 500 grams, that is, approximately 2.0092 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT SEVENTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT RICO]

On or about September 9, 2021, in Los Angeles County, within the Central District of California, defendant OSCAR RICO, also known as "Chile," knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 6.713 kilograms, of methamphetamine, a Schedule II controlled substance.

COUNT EIGHTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

[DEFENDANT RICO]

On or about September 9, 2021, in Los Angeles County, within the Central District of California, defendant OSCAR RICO, also known as "Chile," knowingly and intentionally possessed with intent to distribute cocaine, a Schedule II narcotic drug controlled substance.

1

2

3

4

5

6

7

8

9

COUNT NINETEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT VALDIVIA]

On or about September 9, 2021, in Los Angeles County, within the Central District of California, defendant JORGE VALDIVIA, also known as "George Gonzalez Salazar," knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 162.8 grams, of methamphetamine, a Schedule II controlled substance.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT TWENTY

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi)]

[DEFENDANT G. RAMOS]

On or about September 9, 2021, in Los Angeles County, within the Central District of California, defendant GENARO RAMOS, also known as "Bandit," knowingly and intentionally possessed with intent to distribute at least 400 grams, that is, approximately 548 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT TWENTY-ONE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi)]

[DEFENDANT G. RAMOS]

On or about September 9, 2021, in Los Angeles County, within the Central District of California, defendant GENARO RAMOS, also known as "Bandit," knowingly and intentionally possessed with intent to distribute at least 100 grams, that is, approximately 433 grams, of a mixture and substance containing a detectable amount of (N-(4-Fluorophenyl)-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide) ("p-Fluorofentanyl"), an analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), and a Schedule I narcotic drug controlled substance.

COUNT TWENTY-TWO

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT ARREGUIN]

On or about September 21, 2021, in Los Angeles County, within the Central District of California, defendant ELVIS ARREGUIN knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 674.9 grams, of methamphetamine, a Schedule II controlled substance.

COUNT TWENTY-THREE

[21 U.S.C. § 856(a)(1)]

[DEFENDANT ARREGUIN]

Beginning on a date unknown, and continuing to on or about September 21, 2021, in Los Angeles County, within the Central District of California, defendant ELVIS ARREGUIN knowingly used and maintained a place, that is, 1472 W. Gaylord Street in Long Beach, California, for the purpose of manufacturing and distributing controlled substances, namely, N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance, and methamphetamine, a Schedule II controlled substance.

COUNT TWENTY-FOUR

[18 U.S.C. § 924(c)(1)(A)(i)]

[DEFENDANT MOSELY]

On or about September 6, 2021, in Orange County, within the Central District of California, defendant JUSTIN CORNELL MOSELY, knowingly possessed a firearm, namely, an Israel Military Industries, model Desert Eagle, .40 caliber semi-automatic pistol, bearing serial number 32314808, in furtherance of drug trafficking crimes, namely, Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 846, as charged in Count One of this Indictment, and Possession with Intent to Distribute Cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), as charged in Count Fifteen of this Indictment.

COUNT TWENTY-FIVE

[18 U.S.C. § 924(c)(1)(A)(i)]

[DEFENDANT RICO]

On or about September 9, 2021, in Los Angeles County, within the Central District of California, defendant OSCAR RICO, also known as "Chile," knowingly possessed a firearm, namely, a Taurus, model PT 92 AFS-D, 9mm caliber semi-automatic pistol, bearing serial number TLR83493, in furtherance of drug trafficking crimes, namely, Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 846, as charged in Count One of this Indictment, Possession with Intent to Distribute Methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A), as charged in Count Seventeen of this Indictment, and Possession with Intent to Distribute Cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), as charged in Count Eighteen of this Indictment.

COUNT TWENTY-SIX

[18 U.S.C. § 924(c)(1)(A)(i)]

[DEFENDANT G. RAMOS]

On or about September 9, 2021, in Los Angeles County, within the Central District of California, defendant GENARO RAMOS, also known as "Bandit," knowingly possessed firearms, namely, a Glock, model 17, 9mm caliber semi-automatic pistol, bearing serial number BCBK446, and a Springfield Armory U.S.A., model XDs-40, .40 caliber semi-automatic pistol, bearing serial number S3526985, in furtherance of drug trafficking crimes, namely, Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 846, as charged in Count One of this Indictment, Possession with Intent to Distribute Fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(vi), as charged in Count Twenty of this Indictment, and Possession with Intent to Distribute a Fentanyl Analogue and Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(vi), as charged in Count Twenty-One of this Indictment.

COUNT TWENTY-SEVEN

[18 U.S.C. § 922(g)(1)]

[DEFENDANT RICO]

On or about July 9, 2021, in Los Angeles County, within the Central District of California, defendant OSCAR RICO, also known as "Chile," knowingly possessed the following firearms, in and affecting interstate and foreign commerce:

(1)  a Taurus, model TCP, .380 caliber semi-automatic pistol, bearing serial number 1D098416; and

(2)  a Springfield Armory U.S.A., model XDs, 9mm caliber semi-automatic pistol, bearing serial number HG915548.

Defendant RICO possessed such firearms knowing that he had previously been convicted of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

(1)  Possession of Marijuana for Sale, in violation of California Health and Safety Code Section 11359, in the Superior Court for the State of California, County of Los Angeles, case number VA130491, on or about July 15, 2013;

(2)  Taking a Vehicle without Owner's Consent, in violation of California Vehicle Code Section 10851(a), in the Superior Court for the State of California, County of Los Angeles, case number VA035225, on or about March 4, 1996; and

(3)  Possession of a Controlled Substance, in violation of California Health and Safety Code Section 11350(a), in the Superior Court for the State of California, County of Los Angeles, case number VA027191, on or about January 3, 1995.

COUNT TWENTY-EIGHT

[18 U.S.C. § 922(g)(1)]

[DEFENDANT RICO]

On or about September 9, 2021, in Los Angeles County, within the Central District of California, defendant OSCAR RICO, also known as "Chile," knowingly possessed a firearm, namely, a Taurus, model PT 92 AFS-D, 9mm caliber semi-automatic pistol, bearing serial number TLR83493, in and affecting interstate and foreign commerce.

Defendant RICO possessed such firearm knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

(1)   Possession of Marijuana for Sale, in violation of California Health and Safety Code Section 11359, in the Superior Court for the State of California, County of Los Angeles, case number VA130491, on or about July 15, 2013;

(2)   Taking a Vehicle without Owner's Consent, in violation of California Vehicle Code Section 10851(a), in the Superior Court for the State of California, County of Los Angeles, case number VA035225, on or about March 4, 1996; and

(3)   Possession of a Controlled Substance, in violation of California Health and Safety Code Section 11350(a), in the Superior Court for the State of California, County of Los Angeles, case number VA027191, on or about January 3, 1995.

COUNT TWENTY-NINE

[18 U.S.C. § 922(g)(1)]

[DEFENDANT G. RAMOS]

On or about September 9, 2021, in Los Angeles County, within the Central District of California, defendant GENARO RAMOS, also known as "Bandit," knowingly possessed the following firearms and ammunition, in and affecting interstate and foreign commerce:

(1)  a Glock, model 17, 9mm caliber semi-automatic pistol, bearing serial number BCBK446;

(2)  a Springfield Armory U.S.A., model XDs-40, .40 caliber semi-automatic pistol, bearing serial number S3526985;

(3)  13 rounds of Winchester 9mm caliber ammunition;

(4)  eight rounds of Companhia Brasileira de Cartuchos .40 caliber ammunition;

(5)  two rounds of Winchester .40 caliber ammunition;

(6)  two rounds of Federal Cartridge .40 caliber ammunition;

(7)  one round of Companhia Brasileira de Cartuchos 9mm caliber ammunition;

(8)  one round of X-TREME 9mm caliber ammunition;

(9)  one round of Remington 9mm caliber ammunition;

(10) one round of Blazer 9mm caliber ammunition; and

(11) one round of Winchester .40 caliber ammunition.

Defendant G. RAMOS possessed such firearms and ammunition knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

(1)  Possession of a Controlled Substance, in violation of California Health and Safety Code Section 11377(a), in the Superior

46

1  Court for the State of California, County of Los Angeles, case number

2  TA125621, on or about March 18, 2013;

3        (2)   Possession of Marijuana for Sale, in violation of

4  California Health and Safety Code Section 11359, in the Superior

5  Court for the State of California, County of Los Angeles, case number

6  TA113404, on or about September 15, 2010; and

7        (3)   Burglary, in violation of California Penal Code Section

8  459, in the Superior Court for the State of California, County of Los

9  Angeles, case number TA093692, on or about November 5, 2007.

COUNT THIRTY

[18 U.S.C. § 922(g)(1)]

[DEFENDANT GIL]

On or about September 23, 2021, in Los Angeles County, within the Central District of California, defendant ALEX JEOVANY GIL knowingly possessed the following ammunition, in and affecting interstate and foreign commerce:

(1)  seven rounds of Federal Cartridge .45 caliber ammunition;

(2)  one round of Speer 9mm caliber ammunition; and

(3)  one round of Sellier & Bellot 9mm caliber ammunition.

Defendant GIL possessed such ammunition knowing that he had previously been convicted of a felony crime punishable by a term of imprisonment exceeding one year, namely, Grand Theft, in violation of California Penal Code Section 487(c), in the Superior Court for the State of California, County of Orange, case number 98CF2251, on or about August 20, 1998.

1                    FORFEITURE ALLEGATION ONE

2        [21 U.S.C. § 853; 18 U.S.C. § 924; 28 U.S.C. § 2461(c)]

3        1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal

4   Procedure, notice is hereby given that the United States of America

5   will seek forfeiture as part of any sentence, pursuant to Title 21,

6   United States Code, Section 853, Title 18, United States Code,

7   Section 924, and Title 28, United States Code, Section 2461(c), in

8   the event of any defendant's conviction of the offenses set forth in

9   any of Counts One through Twenty-Three of this Indictment.

10       2.   Any defendant so convicted shall forfeit to the United

11  States of America the following:

12            (a)  All right, title and interest in any and all property,

13  real or personal, constituting or derived from, any proceeds which

14  the defendant obtained, directly or indirectly, from any such

15  offense;

16            (b)  All right, title and interest in any and all property,

17  real or personal, used, or intended to be used, in any manner or

18  part, to commit, or to facilitate the commission of any such offense;

19            (c)  All right, title, and interest in any firearm or

20  ammunition involved in or used in any such offense; and

21            (d)  To the extent such property is not available for

22  forfeiture, a sum of money equal to the total value of the property

23  described in subparagraphs (a), (b), and (c).

24       3.   Pursuant to Title 21, United States Code, Section 853(p),

25  and as incorporated by Title 28, United States Code, Section 2461(c),

26  any defendant so convicted, shall forfeit substitute property if, by

27  any act or omission of said defendant, the property described in the

28  preceding paragraph, or any portion thereof: (a) cannot be located

                                    49

upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Twenty-Four through Thirty of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)   All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(b)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

//

1  substantially diminished in value; or (e) has been commingled with

2  other property that cannot be divided without difficulty.

4                                    A TRUE BILL

6                                    _____/S/_____
                                     Foreperson

8  STEPHANIE S. CHRISTENSEN
   Acting United States Attorney

11 SCOTT M. GARRINGER
   Assistant United States Attorney
12 Chief, Criminal Division

13 SHAWN J. NELSON
   Assistant United States Attorney
14 Chief, International Narcotics,
   Money Laundering, and
15 Racketeering Section

16 CHRISTOPHER C. KENDALL
   Assistant United States Attorney
17 Deputy Chief, International
   Narcotics, Money Laundering, and
18 Racketeering Section